

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

August 15, 2022

**BY ECF**

The Honorable Jed S. Rakoff
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Alvin Fernandez*, S2 21 Cr. 412 (JSR)

Dear Judge Rakoff:

      The Government submits this letter in advance of the sentencing of Alvin Fernandez ("Fernandez" or the "defendant") in the above-referenced matter, currently scheduled for August 22, 2022 at 4:00 p.m.  The defendant was a member of the "Get Money Gunnaz" or "GMG" set of the New York City-wide "Young Gunnaz" or "YGz" street gang (the "GMG YGz" or the "Crew").  The defendant, and other members of the Crew, sold narcotics on GMG-controlled blocks in the vicinity of 184th Street and Morris Avenue, carried firearms, and engaged in back-and-forth shootings with neighboring, rival crews.  The defendant sold drugs for the Crew.  For the reasons set forth below, including the Department's support of the EQUAL Act, S.79, discussed *infra*, the Government respectfully request that the Court impose a sentence of 72 months' imprisonment.

      **I.**      **Offense Conduct**

          **A.  Background**

      For years, members of the GMG YGz engaged in drug dealing, firearms offenses, and crimes of violence, including shootings, in the vicinity of 184th Street and Morris Avenue in the Bronx, New York.  (*See* Final Presentence Investigation Report, revised May 24, 2022 (the "PSR") ¶¶ 13-14).  The Crew engaged in controlled sales, primarily of cocaine base, and of relatively smaller amounts of heroin and fentanyl, to undercover law enforcement officers ("UCs") and confidential sources ("CSs").  (PSR ¶ 13).  Beginning in approximately 2017, UCs and CSs working for and at the direction of the New York City Police Department ("NYPD") and, later, the Drug Enforcement Administration ("DEA") began infiltrating the Crew through controlled purchases of narcotics.  (PSR ¶ 14).  Pursuant to his written plea agreement with the Government (the "Plea Agreement"), the defendant agreed that he is responsible for participating in a conspiracy to distribute at least 7.5 kilograms of cocaine base.

On June 22, 2021, a Grand Jury sitting in the Southern District of New York returned superseding indictment S1 21 Cr. 412 (the "Indictment"), charging the defendant and twelve others in two counts. Count One charged the defendant with participating in a conspiracy to distribute and possess with intent to distribute (i) 280 grams and more of mixtures and substances containing a detectable amount of cocaine base in a form commonly known as "crack cocaine," in violation of 21 U.S.C. § 841(b)(1)(A); (ii) mixtures and substances containing a detectable amount of heroin, in violation of 21 U.S.C. § 841(b)(1)(C); and (iii) mixtures and substances containing a detectable amount of fentanyl, in violation of 21 U.S.C. § 841(b)(1)(C). Count Two charged the defendant with using and carrying, and aiding and abetting the use and carrying of, a firearm in furtherance of that drug conspiracy, in violation of 18 U.S.C. § 924(c).

### B. The Defendant

As a member of the GMG YGz, the defendant sold crack cocaine in the gang's Bronx territory. (PSR ¶ 26). He was the direct seller in at least ten controlled purchases by law enforcement. (*Id.*).

On or about July 28, 2021, the defendant was arrested in the District of Oregon following a traffic stop. (Dkt. 52; PSR ¶ 70). The defendant was the driver of a vehicle that was stopped by Oregon State Police for speeding. (PSR ¶ 70). The defendant provided a false name to investigators, and his true identity—along with the federal warrant for his arrest—were discovered only after further questioning and, ultimately, fingerprinting. (PSR ¶ 70).

### II.   The Defendant's Plea and Applicable Guidelines Range

On March 2, 2022, pursuant to a plea agreement with the Government (the "Plea Agreement"), the defendant waived indictment and pled guilty to a superseding Information that charged one count of conspiring to distribute cocaine base, or "crack cocaine," in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846. In the Plea Agreement, the parties stipulated that the Stipulated Guidelines Range for this offense is 135 to 168 months' imprisonment, based on a total offense level of 31 and a Criminal History Category of III (based on four criminal history points). The United States Probation Office (the "Probation Office") calculated the same offense level, but found only three criminal history points and thus a Criminal History Category of II. (PSR ¶¶ 60, 62-68, 111). Accordingly, the Probation Office calculates a Guidelines range of 121 to 151 months. (PSR ¶ 110). The Probation Office recommends a sentence of 92 months' imprisonment. (*Id.* at 29).

As the Court may be aware, on June 22, 2021, the U.S. Department of Justice provided public testimony in support of the EQUAL Act, S.79. This proposed legislation would eliminate the powder-to-cocaine base sentencing disparity in 21 U.S.C. §§ 841 and 960. Although the Department supports elimination of the powder-to-cocaine base disparity, until legislation to that effect is passed, the current statutory and guidelines provisions remain in effect. In this case, the amount of cocaine attributable to the defendant's criminal conduct, as stipulated in the Plea Agreement, is 7.5 kilograms of cocaine base, which results in a base offense level of 31 and a Stipulated Guidelines Range of 135 to 168 months' imprisonment. If the powder cocaine Guidelines were instead applied to the same amount of cocaine base, the base offense level would

be 27, and the Guidelines sentencing range would be 87 to 108 months' imprisonment.[1] The Court can and should, consistent with the law and current sentencing framework, consider the powder-to-cocaine base disparity in assessing the Section 3553(a) factors. *See Kimbrough v. United States*, 552 U.S. 85, 106-08 (2007); *United States v. Cavera*, 550 F.3d 180, 191-92 (2d Cir. 2008) (en banc). Based on consideration of the powder-to-cocaine base disparity and all the relevant factors under Section 3553(a) as set forth below, the Government believes a sentence of 72 months' imprisonment, below the powder cocaine-based Guidelines of 87 to 108 months' imprisonment, would be appropriate.

### III. Applicable Law

As the Court is aware, the Sentencing Guidelines provide strong guidance to sentencing courts following *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall* v. *United States*, 552 U.S. 38, 46 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 49. After that calculation, however, the Court must consider the seven factors outlined in Title 18, United States Code, Section 3553(a), which include the nature and circumstances of the offense, the individual characteristics of the defendant, and the need to adequately deter criminal conduct and promote respect for the law. *Id.* at 50 & n.6.

### IV. Discussion

The Government respectfully submits that the seriousness of the offense, the need to promote respect for the law, ensure just punishment, protect the public, and afford adequate deterrence, all warrant imposition of a substantial sentence of imprisonment. However, in view principally of the defendant's relatively lesser culpability as compared to that of his co-defendants, the Government believes that a sentence of 72 months' imprisonment would be sufficient, but not greater than necessary, to achieve the purposes of sentencing.

The nature and seriousness of the defendant's conduct weigh heavily in favor of a significant sentence. The defendant sold crack cocaine on behalf of the Crew, which as a whole was responsible for selling crack, heroin, and fentanyl into the community over a period of years. As described in other sentencing submissions in this matter, this conduct has deleterious effects on untold drug users and addicts, in addition to the community writ large. The defendant should be held responsible for the harm his conduct created. Based on his conduct in this case alone, *i.e.*, the number of controlled sales for which he is responsible and no known use of firearms, the defendant's culpability is similar to that of other defendants whom the Government permitted to plead guilty to offenses that do not carry a mandatory minimum sentence. For example, Malcolm Rivera, whom this Court sentenced to four months' imprisonment, and Shakur Culbert, whom this Court sentenced to eight months' imprisonment; as compared to Deuri Carambot, who received a sentence of 84 months' imprisonment. Similar to Daniel Silva—who received a sentence of 24 months' imprisonment—what distinguishes the defendant among that relatively less culpable

---

[1] At Criminal History Category II, the Guidelines range would be 78 to 97 months' imprisonment.

group is his age and prior criminal history. In addition, unlike other defendants in this case, the defendant did not surrender after the Indictment was unsealed and co-defendants had been arrested. To the contrary, the defendant was arrested on the other side of the country; when stopped for speeding in Oregon, he gave a false name. Balancing these factors, the Government submits a sentence of 72 months' imprisonment would be sufficient but not greater than necessary to serve the purposes of sentencing.

## V.   Conclusion

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence of 72 months' imprisonment. Such a sentence would be sufficient, but not greater than necessary, to serve the legitimate purposes of sentencing.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:  _____/s/_____
     Micah Fergenson
     Jacob Gutwillig
     Kaylan Lasky
     Assistant United States Attorneys
     (212) 637-2190 / 2215 / 2315